IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TRAVIS DORREL ROSS,            )
AIS #199066,                   )
                               )
        Plaintiff,             )
                               )
    v.                         )        CASE NO. 2:13-CV-764-WKW
                               )        (WO)
KENNETH SCONYERS, et al.,      )
                               )
        Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Travis Dorrel Ross ("Ross"), a state inmate.  In the instant complaint, Ross challenges the constitutionality of a disciplinary action initiated against him for indecent exposure/exhibitionism/lewd conduct during his confinement at the Easterling Correctional Facility ("Easterling").  Specifically, Ross alleges that the defendants deprived him of due process, ignored an administrative rule governing disciplinary actions and violated state law by failing to investigate his allegation of perjury lodged against the arresting officer. Doc. 1 at 6–9.  Ross names Kenneth Sconyers, the warden who approved the disciplinary action; Sgt. Mitchell Borders, the disciplinary hearing officer; and Officer Linda H. Glenn, the arresting officer, as defendants in this cause of action.  Ross seeks issuance of a declaratory judgment, expungement of the disciplinary action and monetary damages from the defendants. Doc. 1 at 9–10.

The defendants filed an answer, special report and supporting evidentiary materials, including affidavits and certified prison records, addressing Ross' claims for relief.  In these

documents, the defendants deny they acted in violation of Ross' constitutional rights.  After receipt of the defendants' special report, the court issued an order directing Ross to file a response to the report, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 12 at 2.  The order specifically cautioned Ross that "the court may at any time [after expiration of the time for his response] and **without further notice to the parties** (1) treat the special report and any evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 12 at 2–3.  Pursuant to this order, the court now deems it appropriate to treat the defendants' report as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.

Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a

2

genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

Once the defendants have met their evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick*

*v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record, and finds that Ross has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  DISCUSSION

### A.  Relevant Facts

On March 10, 2013, defendant Glenn initiated a disciplinary action against Ross for a violation of Rule 923 (indecent exposure/exhibitionism/lewd conduct). Doc. 1-1 at 1, ¶3–¶4. Defendant Glenn charged that on this date she observed Ross "stroking [his] exposed erect penis in backward and forward motion, while looking directly at [her]." Doc. 1-1 at ¶4.  Officer Randy Brown served Ross with notice of the disciplinary charge and the scheduled date for the disciplinary hearing related to this charge. Doc. 1-1 at ¶5.  Ross signed the document acknowledging receipt of service of the disciplinary and identified three inmate witnesses to be called at the disciplinary hearing. Doc. 1-1 at ¶6–¶7.  At the time of the disciplinary hearing, defendant Borders attempted to have the inmates Ross listed as witnesses brought to the hearing.

4

However, two of the witnesses refused to appear at the hearing and the other witness had been transferred from Easterling. Doc. 1-1 at ¶16.

During the hearing, defendant Borders provided Ross the opportunity to question defendant Glenn, present evidence on his own behalf, and provide testimony.  In so doing, Ross testified that he did not commit the lewd act alleged by defendant Glenn. Doc. 1-1 at 1, ¶14.  Defendant Glenn, however, testified that she "observed . . . Ross . . . stroking his erect penis in a backward and forward motion while looking directly at [her.]." Doc. 1-1 at ¶13.  Upon completion of the noticed disciplinary hearing and after considering all of the testimony, Sgt. Borders adjudged Ross guilty of the charged offense. Doc. 1-1 at 2, ¶17.  Borders set forth the findings of fact as follows, "[i]nmate Travis Ross . . . was observed by Officer Linda Glenn on bed #F1-35B stroking his exposed erect penis, in a backward and forward motion, while looking directly at Officer Glenn. The Hearing Officer further finds that Inmate Ross did expose the private parts of his both within sight of another and that this exposure was done in a lewd or indecent manner.  Therefore the inmate's action does constitute a violation of rule #923-Indecent exposure/exhibitionism/lewd conduct." Doc. 1-1 at ¶17.  Defendant Borders advised that he based his findings of fact on the sworn testimony of the arresting officer. Doc. 1-1 at ¶18.  The sanctions imposed upon Ross for this disciplinary infraction consisted of the loss of canteen, telephone and visitation privileges for thirty days and placement in segregation for this same period of time. Doc. 1-1 at ¶20.

Ross contends that the disciplinary action violated his rights to due process and subjected him to cruel and unusual punishment.  He also alleges that the lack of an investigation into the disciplinary charge not only deprived him of due process but likewise violated an administrative regulation and state law.  Finally, Ross asserts that the charge was based on false and perjured information provided by defendant Glenn.

5

**B.  Absolute Immunity**

With respect to those claims lodged against the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity . . . .  Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Seminole Tribe v. Fla.*, 517 U.S. 44, 59 (1996); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**C.  Due Process**

Ross challenges the due process afforded to him during the disciplinary proceedings conducted on the charge of indecent exposure/exhibitionism/lewd conduct.  Specifically, Ross alleges that the disciplinary was based on a false and perjured charge,[1] the defendants failed to

---

[1] "The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986), *cert. denied*, 485 U.S. 982 (1988); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that "a prison inmate has no general right to be free from being falsely accused in a misbehavior report" as such claim is addressed in context of the protections afforded by due process); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (holding that an inmate's claim based on false disciplinary charges fails to state a constitutional claim absent an attendant due process violation).

properly investigate the charge, his testimony was given no weight by the hearing officer or warden, and the finding of guilt was based solely on the testimony of the arresting officer. As stated above, the punishments imposed upon Ross for this disciplinary infraction were loss of store, telephone and visitation privileges for thirty days and confinement in disciplinary segregation for thirty days. Doc. 1-1 at 2, ¶20. Under the circumstances of this case, Ross is entitled to no relief on his due process claim.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S. Ct. 1254, 1263-64, 63 L. Ed. 2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S. Ct. 2963, 2976, 41 L. Ed. 2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin,* 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485–86 (noting temporary confinement of inmate in disciplinary segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process

concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (holding no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (holding that prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").  In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  Thus, the deprivations imposed upon Ross based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*.

This court must therefore determine whether the actions about which Ross complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.  As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S. at 481, 115 S. Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-

to-day management of prisons. *Id.,* at 482–483, 115 S. Ct. 2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483–484, 115 S. Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S. Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Simply put, Ross' confinement in disciplinary segregation for thirty days did not deprive him of a state-created liberty interest. *See Sandin*, 515 U.S. at 486 (holding that confinement in disciplinary segregation for thirty days did not violate the Constitution or impinge on a state-created liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding that confinement in segregation for two months did not deprive inmate of a constitutionally protected liberty interest).  As the Southern District of Alabama recently held:

With respect to [Plaintiff's] loss of canteen, telephone, and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation.  The Court finds the Constitution does not grant an inmate a right in visitation, canteen, and telephone privileges. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S. Ct. 2162, 2167, 2168, 156 L. Ed. 2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free

association being least compatible right to prison confinement); *Charriez v. Sec'y, Fla. Dep't of Corrs.*, 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that the one-year loss of visitation privileges did not implicate a state-created liberty interest as there was no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges; *Walker v. Loman*, CA 06-0896-WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). Moreover, the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges. *Dumas v. State*, 675 So. 2d 87, 88 (Ala. Crim. App. 1995).

An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485, 115 S. Ct. at 2301. The further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. *See id.* at 475, 485, 115 S. Ct. at 2296, 2301. Thus, [Plaintiff] does not have a liberty interest in canteen, visitation, and telephone privileges to which due process attaches.

*Bass v. Wilson*, 2015 WL 4742473, at *5–*6 (S.D. Ala. 2015).

Applying the *Sandin* inquiry, it is clear that the temporary loss of canteen, telephone and visitation privileges and short-term confinement in segregation "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id.* at 485. In light of the foregoing, the court concludes that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, due process did not attach to the disciplinary proceeding and summary judgment is due to be granted in favor of the defendants.

Even assuming *arguendo* a right to due process in the disciplinary proceeding, Ross remains entitled to no relief. In *Wolff*, the United States Supreme Court determined that in the context of a prison disciplinary proceeding where a protected liberty interest is implicated, i.e., the

loss of good time, the Due Process Clause requires the provision of three procedural protections which include (1) advance, written notice of the charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action taken.  Furthermore, at a prison disciplinary hearing, the requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  The law is well settled that it is not the function of this court to assume the task of retrying prison disciplinary disputes, and no *de novo* review of a hearing officer's factual findings is required when the decision is supported by some evidence. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.), *cert. denied*, 455 U.S. 992 (1982).  This court must only determine whether there is any evidence in the record which supports the conclusion reached by the hearing officer. *Hill*, 472 U.S. at 455–56.

A thorough review of the disciplinary report submitted by the plaintiff in support of his complaint demonstrates that the disciplinary proceedings comported with all of the requirements of *Wolff*.  Correctional officials furnished Ross with written notice of the charge against him, allowed him the opportunity to call witnesses, question the arresting officer and present evidence in his own behalf, and provided written statements by the factfinder of the evidence relied on and the reasons for the disciplinary action.  Additionally, the testimony of the arresting officer provided more than sufficient evidence to support the decision of the hearing officer.  Nothing more is required by the Constitution.  It is therefore clear that Ross received all the process to which he was due in the disciplinary proceeding.

### D.  False Information

Ross alleges that the disciplinary charge lodged against him resulted from a false

accusation made by defendant Glenn. Doc. 1 at 6 ("[O]fficer Linda H. Glenn blatantly lied on me and perjured herself in her incident report written accusing me of violating Rule 923 - Indecent exposure/exhibitionism and lewd conduct.").   Ross further argues that the hearing officer erroneously relied on this information in determining his guilt for this offense.  The court therefore construes the complaint to contain a false information claim regarding the disciplinary at issue.

Defendant Glenn denies she fabricated the charge and maintains that she issued the disciplinary because Ross committed a lewd act in her presence. Doc. 8-3 ("I positively identified Inmate Travis Ross . . . lying on top of [his] bed . . . , stroking his exposed erect penis in a backward and forward motion while looking directly at me. . . . [H]is complaint of me lying on him is not true.").  The defendants likewise deny any use of false information in the disciplinary process and, instead, aver that the challenged disciplinary occurred solely due to Ross' violation of an institutional rule governing inmate behavior. Docs. 8-2 & 8-3.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on admittedly false information to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.   The Eleventh Cicrcuit, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons & Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942.  We also determined that prisoners do not have a due process right to examine their

> prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id*.  In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.  As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.  *Slocum* controls the disposition of the instant false information claim.

The defendants assert that the information on which they relied in the disciplinary process is correct and an accurate representation of the plaintiff's improper conduct.  Moreover, there is no evidence before the court that the defendants furnished or relied on information they knew to be false during any stage of the disciplinary proceeding.  Of specific importance, there is no admission by any of the defendants that the information utilized in levying the disciplinary against Ross was false, incorrect, erroneous or perjured.  Ross has failed to come forward with any evidence which indicates that the defendants knowingly provided or used false information during the disciplinary process.  Moreover, Ross' conclusory assertion regarding the potential use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not provide or rely on admittedly false information during the disciplinary process.  Consequently, Ross is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants on his false disciplinary claim.

### E.  Cruel and Unusual Punishment

Ross makes the conclusory allegation that the actions of the defendants subjected him to

"cruel and unusual punishment" in violation of the Eighth Amendment. Doc. 1 at 9.  This claim provides no basis for relief as the Eighth Amendment proscribes only those actions which deprive an inmate of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  "'[T]he Constitution does not mandate comfortable prisons.' . . . If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Rhodes*, 452 U.S. at 347–49).  The initiation of disciplinary action against Ross for indecent exposure and the punishments imposed upon him after the determination of guilt did not constitute sufficiently grave deprivations so as to deprive Ross of a right protected by the Eighth Amendment.

### F.  Violation of Administrative Regulation

Ross asserts that the defendants failed to properly investigate the factual basis for the disciplinary charge as permitted by Administrative Regulation No. 403.[2] As previously determined, due process did not attach to the disciplinary proceeding.  Infringements of agency rules, regulations or procedures do not, without more, amount to constitutional violations. *Sandin*, 515 U.S. at 484–86; *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding that mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue).  Insofar as Ross alleges that that the defendants violated his due process rights by failing to adequately investigate the charge lodged against him

---

[2] The regulation provides that "[t]he Warden *may* order an investigation of the charges at the institutional level or request an I and I investigation." Administrative Regulation No. 403, § 3, *http://www.doc.state.al.us* (emphasis added).

for indecent exposure, this claim fails to implicate any constitutional right to which he is entitled because the failure to properly investigate an inmate's complaints does not rise to the level of a constitutional violation.  Inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials. *See DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.,* 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").  Based on the foregoing, the court concludes that the conduct about which the plaintiff complains does not rise to the level of a constitutional violation.  Consequently, the defendants are entitled to summary judgement on the claims alleging a constitutional violation due to a failure to investigate.

### G.  State Law Claim

Ross also alleges that the defendants violated Alabama Code § 14-3-9 when they failed to report his perjury allegation to the Investigation and Intelligence Division for investigation.[3] Review of this claim is appropriate only upon utilization of this court's supplemental jurisdiction. In the posture of this case, the court finds that exercise of such jurisdiction is not warranted.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper  & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotations omitted).  The exercise of supplemental jurisdiction is completely discretionary. *United Mine*

---

[3] This statute, in pertinent part, directs that "[i]t shall be the duty of all employees of the Department of Corrections to report all violations of the law relating to . . . employees and inmates of the Department of Corrections that may come to their knowledge to the Investigation and Intelligence Division of the Department of Corrections." Ala. Code § 14-3-9(a) (1975).  As noted herein, the defendants deny any actual knowledge of an act of perjury committed by defendant Glenn.

*Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper*, 735 F.2d at 428. The Eleventh Circuit has consistently advised district courts to dismiss state law claims when no federal claims remain in the action. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (recommending that supplemental jurisdiction be declined because there are no federal claims remaining in the action); *see also* 28 U.S.C. § 1367(c)(3) (authorizing district courts to "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction").

In view of this court's resolution of the federal claims presented in the complaint, the pendent state claim is due to be dismissed without prejudice. *Gibbs,* 383 U.S. at 726; *L.A. Draper*, 735 F.2d at 428; *see also Ray v. Tenn. Valley Auth.*, 677 F.2d 818 (11th Cir. 1982).

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motion for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the defendants as to all federal constitutional claims.

3.      The pendant state-law claim for lack of an investigation be dismissed without prejudice.

4.      Costs be taxed against the plaintiff.

It is further ORDERED that on or before **June 30, 2016** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions

in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 16th day of June, 2016.

_____/s/ Gray M. Borden_____
UNITED STATES MAGISTRATE JUDGE